IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STACI HIX-HERNANDEZ | § § § | |
| Plaintiff, | § § | |
| v. | § § | NO: 1:20-CV-00029 |
| FORD MOTOR COMPANY | § § § | |
| Defendant. | § § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT FORD MOTOR COMPANY'S OPPOSED MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITIONS OF FORD'S EXPERTS JENNIFER BUCKMAN AND MICHELLE VOGLER**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, the Plaintiff, Dr. Staci Hix-Hernandez, and offers her response to Defendant Ford Motor Company's ("Ford") motion for protective order regarding Plaintiff's intent and notice to conduct in-person depositions of Ford's Rule 26(a)(2) testifying experts Jennifer L. Buckman and Dr. Michelle M. Vogler.

## I.   INTRODUCTION

Plaintiff sent notice to Ford with the intent to take the in-person depositions of Ford's two remaining Rule 26(a)(2) testifying expert witnesses, Jennifer L. Buckman and Dr. Michelle M. Vogler, P.E., at the offices of Ford's counsel in Austin, Texas. Austin is the location of the forum district where the action accrued, where Plaintiff resides, where counsel for both parties practice and reside, where the case is being litigated, and where any disputes that may arise can be quickly resolved by the forum court.

Ford seeks protection from Plaintiff's notices for the two remaining experts. For Ms. Buckman, Ford seeks protection on the basis that an in-person deposition is violative of its alleged "corporate policy" on COVID-19. To be clear, Ms. Buckman is an employee of Ford, but has been designated as only a Rule 26(a)(2) testifying expert, not a corporate representative under Rule 30(b)(6). Thus, her employment with Ford and any of its corporate policies are inconsequential to the instant matter. In the alternative, Ford requests any in-person deposition of Ms. Buckman to be conducted in the Detroit, Michigan area. Similarly, Ford also seeks protection for its Rule 26(a)(2) testifying expert witness, Dr. Michelle M. Vogler, such that any in-person deposition of Dr. Vogler also be conducted in the Detroit area. Somehow Ford believes its "corporate policy" supersedes the Federal Rules of Civil Procedure and precedential case law, and binds the Western District of Texas.

## II.   BACKGROUND

Ford designated three Rule 26(a)(2) testifying expert witnesses in this matter: Kevan J. Granat, Ms. Buckman, and Dr. Vogler. Ultimately, Ford offered these experts for deposition on March 31, April 12, and May 5, 2022, respectively. Plaintiff noticed Ford for the remote, video depositions of all three experts, accordingly. As part of each deposition notice, Plaintiff also included a subpoena duces tecum with a list of requested documents to be produced 10 days before the associated scheduled deposition. To date, Ford has not designated any corporate representative under Rule 30(b)(6).

On March 21, 2022, Ford produced documents responsive to the subpoena duces tecum for Mr. Granat.

On March 31, 2022, Plaintiff took the remote deposition of Mr. Granat, Ford's crash reconstructionist. During the remote deposition, however, Plaintiff learned that Mr. Granat had also created, reviewed, and considered additional facts and data that were not included in his

Rule 26(a)(2)(B) report, as required. Plaintiff also learned that Mr. Granat had exhibits used to summarize or support his opinions that were not included in his report, as required. During the deposition, Plaintiff's counsel requested and Mr. Granat agreed to produce these items afterwards. At the conclusion of the deposition, Plaintiff's counsel read into the record the specific items being requested from Mr. Granat. As of today's date, neither Ford, Ford's counsel, nor Mr. Granat have produced these additional items.

On April 1, 2022, the day after Mr. Granat's remote deposition, Plaintiff notified Ford's counsel about concerns with the remote deposition process for expert witnesses, the above-mentioned document production issues, and Plaintiff's decision to conduct Ms. Buckman's and Dr. Vogler's depositions in person in Austin, Texas rather than remotely. Initially, Ford's counsel was agreeable to in-person depositions for both Ms. Buckman and Dr. Vogler but objected to the location and urged that they should occur in the Detroit, Michigan area.[1]

April 2, 2022 was the deadline for Ford, its counsel, or its expert to produce the documents Plaintiff identified and requested in the subpoena duces tecum that accompanied the original remote deposition notice to Ms. Buckman. No responsive documents were received by that date.

On April 4, 2022, Ford's counsel produced some of the items responsive to the subpoena duces tecum for Ms. Buckman, but not all.[2] Also, for the first time, Ford's counsel notified Plaintiff that Ms. Buckman is not available for an in-person deposition and referenced a heretofore unknown and alleged Ford corporate policy which requires that "all depositions of employees must continue to be conducted remotely at present, to protect the deponents and other

---

1   E-mail from B. Mennucci. April 1, 2022 at 3:41 p.m.
2   E-mail from B. Mennucci. April 4, 2022 at 11:56 a.m.

involved individuals from the COVID-19 virus."[3] Notwithstanding any Ford corporate policy, Ms. Buckman is acting as retained expert witness under Rule 26(a)(2), not a lay company witness, and not a corporate representative under Rule 30(b)(4).

On April 7, 2022, after discussions between counsel, Plaintiff's counsel suggested a compromise and offered to travel to the Detroit area to conduct the depositions of the remaining two experts and the deposition of a corporate representative – all in person – on three consecutive days. This offer was rejected on the basis that "Ford has made the reasoned corporate decision to protect its employees and the spread of COVID by limiting in-person contacts."[4] However, counsel for Ford also indicated that he would "check in with [his] client right away and let [Plaintiff] know."[5]

On April 13, 2022, after waiting six days with no further response, Plaintiff sent Ford its *Plaintiff's Second Amended Notice of Intent to Take the Oral Deposition of Jennifer L. Buckman with Subpoena Duces Tecum*,[6] *Plaintiff's First Amended Notice of Intent to Take the Oral Deposition of Michelle M. Vogler, Ph.D., P.E. with Subpoena Duces Tecum*,[7] and *Plaintiff's Notice of Intent to Take the Oral Deposition of Defendant's Corporate Representative with Subpoena Duces Tecum*.[8]

With reasonable notice, Rule 30(b)(1) permits the noticing party to select the time and place of a deposition. Thus, the in-person depositions for the two experts were scheduled to take place the offices of Ford's counsel in Austin, Texas. Dr. Vogler's deposition was still scheduled

---

3     *Id.*

4     E-mail from B. Mennucci. April 7, 2022 at 3:52 p.m.

5     *Id.*

6     Exhibit A.

7     Exhibit B.

8     Exhibit C.

on her original date – May 5, 2022. Purely out of convenience, Plaintiff noticed Ms. Buckman's deposition to take place on the very next day – May 6, 2022. The location and date for the corporate representative's deposition was left blank as Ford has still not identified its Rule 30(b)(4) designee. It is worth noting, neither Ford nor Ms. Buckman have produced all items responsive to her subpoena duces tecum.

### III.   ARGUMENT & AUTHORITIES

**A.   Ford Request for Protective Order Should Be Denied**

    **1.   *Corporate COVID policy is not good cause***

Ford seeks a protective order prohibiting an in-person deposition of one its expert witnesses, Ms. Buckman, and as its sole basis relies on an alleged Ford corporate policy on COVID-19 which requires that "all depositions of employees must continue to be conducted remotely at present, to protect the deponents and other involved individuals from the COVID-19 virus."[9]

Ford fails to satisfy Rule 26(c)(1) which provides, in part, that a "court may for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[10] The operative phrase here being "good cause." Ford has not alleged, much less demonstrated, any annoyance, embarrassment, oppression, or undue burden or expense. Thus, by definition, Ford fails to meet the minimum requirements to establish good cause for a protective order.

As of the date of this filing, no such alleged corporate policy has been produced to Plaintiff, filed in any pleading to this Court, or attached as an exhibit to Ford's instant motion.[11]

---

9    E-mail from B. Mennucci. April 4, 2022 at 11:56 a.m.

10   *See* FED. R. CIV. P. 26(c)(1).

11   Dkt. 54 at 3.

5

Thus, Ford's request for protection and attempt to rely on a non-existent "company-wide business policy to protect its employees from COVID exposure by conducting business remotely except for place-dependent business needs" is disingenuous.[12]

Further, a thorough review of Ford's corporate website, including its "Operations" tab and "Governance and Policies" subtab, also reveals no such policy.[13] No articles regarding COVID-19 have been published on Ford's corporate website since May 2020.[14] In reviewing Ford's media website, one has to go back all the way to May 12, 2021 to find any Ford article mentioning COVID-19.[15] Even then, the article was only about a do-it-yourself air filtration system Ford co-developed and not about any workplace or employee restrictions due to the pandemic.

Moreover, Ford's recent actions belie its current request for protection. Just last week, on April 26, 2022, Ford announced the start of production of its new F-150 Lightning (full-size, all electric pickup) at a well-attended corporate event in one of its facilities in Dearborn, Michigan.[16] Photos from Ford's own media releases below show that social distancing was totally ignored and there was not a mask in sight.

---

12   *Id.*

13   https://corporate.ford.com/home.html;
     https://corporate.ford.com/operations.html; and
     https://corporate.ford.com/operations/governance-and-policies.html.

14   https://corporate.ford.com/articles.html and
     https://corporate.ford.com/articles/products/ford-community-responds-to-pandemic-on-local-and-national-scale.html

15   https://media.ford.com/content/fordmedia/fna/us/en/news/2021/05/12/ford-diy-air-filtration-kit-covid-19-validated.html

16   https://media.ford.com/content/fordmedia/fna/us/en/news/2022/04/26/production-begins-f-150-lightning.html







Not afraid of interstate travel, Ford even sent a contingency of executives and notables to ring the opening bell of the New York Stock Exchange on April 28, 2022.[17]  Again, Ford demonstrated that coronavirus and COVID-19 are of little corporate concern at the moment.



---

17  https://media.ford.com/content/fordmedia/fna/us/en/news/2022/04/28/ford-opening-bell-new-york-stock-exchange.html

8

Furthermore, both Ms. Buckman and Dr. Vogler have traveled and appeared in person as expert witnesses on numerous occasions in the past two years. Most recently, in November 2020, Ms. Buckman appeared as an expert witness for Ford and testified in person at trial in the Western District of Tennessee.[18] Similarly, in July 2021, Dr. Vogler appeared as an expert witness and testified in person at trial in the Northern District of Iowa.[19]

Truth be told, Ford has no current COVID-19 policy and is not genuinely concerned about "protect[ing] its employees from COVID exposure by conducting business remotely."[20] Ford brought back its workers and restarted its manufacturing in April 2020 after only a very brief shutdown, and also began assisting dealers in reopening showrooms.[21] As Ford put it at the time:

> The automotive industry accounts for 6 percent of gross domestic product in the U.S. – more than 7 million jobs are dependent upon automakers, dealers and suppliers.
>
> No automaker employs more hourly workers in the U.S. than Ford, which manufactures and exports more vehicles in the U.S. than any other automaker. Last year Ford built more than 492,000 more vehicles in America than the next highest-producing automaker.
>
> F-Series alone requires four U.S. plants, approximately 19,000 Ford employees and 2,000 U.S. suppliers – and generates an estimated $50.2 billion in global sales revenue annually. That's more than the 2019 annual revenues of American Express, Coca-Cola, Cisco Systems and Delta Airlines.[22]

Thus, as far back as two years ago – well before the height of the pandemic – it was paramount for Ford to get its workers back to work because, in its most basic form, Ford is a manufacturing company.

---

18   *See generally Kines v. Ford Motor Co.*, 558 F.Supp.3d 614 (W.D. Tenn. 2021).

19   *See generally Wood v. PACCAR, Inc.*, No. 19-CV-1010-LRR (N.D. Iowa 2021).

20   Dkt. 54 at 3.

21   https://corporate.ford.com/articles/products/restarting-ford.html

22   *Id.*

9

In any event, Ms. Buckman is acting as an independent, retained expert witness under Rule 26(a)(2), not a lay company witness, and not a Ford corporate representative under Rule 30(b)(4). Thus, Ford's internal policies, whatever they may be, are inapplicable under the circumstances.

### 2. *Remote deposition is prejudicial to Plaintiff*

In part, Ford asserts in its motion that "[p]ermission for remote deposition should be granted unless the other objecting party would be prejudiced."[23] Plaintiff would be severely prejudiced if her right to depose an expert witness in person was annulled by a protective order. Plaintiff made a good faith attempt to conduct Mr. Granat's deposition remotely.

As described above, on at least one occasion, Ford, its counsel, and one of its expert witnesses failed to comply with Rule 26(a)(2)(B) and have not produced all facts or data considered by the witness or all exhibits that were used to summarize or support the witness's opinions. This failure is on the record of Mr. Granat's deposition and has still not been resolved as of the date of this filing. Had this deposition taken place in person, Plaintiff would have had the option of immediately reviewing all documents, tangible items, or electronic files then in possession of the deponent or terminating the deposition, as necessary, and immediately seeking relief from the forum Court.

Additionally, on at least one occasion, Ford, its counsel, and one of its expert witnesses failed to comply with the subpoena duces tecum attached to Ms. Buckman's prior notice of remote deposition. This failure has been acknowledged by Ford's counsel, but has not been resolved as of the date of this filing. By changing Ms. Buckman's original remote deposition to an in-person setting, Plaintiff will have the option of immediately reviewing all documents,

---

23   Dkt. 54 at 4.

tangible items, or electronic files then in possession of the deponent and, if necessary, terminating the deposition and immediately seeking relief from the forum Court.

Thus, contrary to Ford's assertion, there is a great downside to Plaintiff if Ford was again allowed to obstruct the production of required documents and disclosures by conducting further depositions in a remote setting.

B. **Ford's Alternative Relief Should be Denied**

Ford also seeks a protective order prohibiting an in-person deposition in Austin, Texas of one its expert witnesses, Dr. Vogler, and relies on "the same reasons stated *supra* regarding Ms. Buckman."[24] With reasonable notice, Rule 30(b)(1) permits the noticing party to select the time and place of a deposition. Thus, Plaintiff, not Ford gets to determine the location of the deposition. There is no requirement that a deposition be conducted in any specific location.

Like Ms. Buckman, Dr. Vogler is a retained Rule 26(a)(2) expert witness and is subject to being deposed. Plaintiff has demonstrated that Ford has failed to show good cause in its reliance on an alleged and inapplicable corporate policy. Further, Plaintiff has demonstrated Ford's past bad acts regarding the required production of documents by expert witnesses and how such actions have prejudiced and continue to prejudice Plaintiff. By further requiring remote depositions of Ford's remaining experts would injure and disadvantage Plaintiff even further.

Unlike Ms. Buckman, Dr. Vogler is not also an employee of Ford. Thus, even if some Ford corporate policy superseded the Federal Rules of Civil Procedure (which it does not), such policy would not apply to Dr. Vogler.

For these reasons, Ford's request to require Plaintiff to conduct Dr. Vogler's deposition in Michigan should be denied.

---

24　　*Id.* at 7.

11

C.  **Scientific Data, and Local and Federal Law Refute Ford's Alleged COVID Policy**

According to the Centers for Disease Control and Prevention's ("CDC") COVID Data Tracker, the current rate for COVID-19 infections in Wayne County, Michigan is 194.3 cases per 100,000 population and the new admissions rate is 8.2 per 100,000.[25] In comparison, the COVID-19 infection and new admission rates in Travis County, Texas are roughly one-third as much – 65.54 cases and 2.5 admissions per 100,000 population.[26] Thus, at least according to the CDC, the likelihood of contracting COVID-19 is about three times higher in the Detroit area than in Austin, Texas.

On February 16, 2022, the Michigan Department of Health and Human Services expired its Public Health Advisory on Masking in Indoor Public Settings, including school settings.[27] Similarly, Travis County and the City of Austin terminated their respective orders requiring mask requirements on March 22 and March 23, respectively.[28] Further, the federal mandate regarding face mask use on public transportation expired by operation of court order on April 18, 2022. To say that Ford must now prohibit travel in order to protect and keep its workers in Detroit is not only questionably convenient, but inconsistent with scientific data and federal law.

V.  **CONCLUSION & PRAYER**

Ford has failed to demonstrate good cause why this Court should issue a protective order regarding the depositions of Ford's Rule 26(a)(2) expert witnesses Jennifer Buckman and Dr.

---

25   https://covid.cdc.gov/covid-data-tracker/#county-view?list_select_state=Michigan&data-type=CommunityLevels&list_select_county=26163

26   https://covid.cdc.gov/covid-data-tracker/#county-view?list_select_state=Texas&data-type=CommunityLevels&list_select_county=48453

27   https://www.michigan.gov/-/media/Project/Websites/coronavirus/Folder2/FINAL_MDHHS_Masking_Guidance_21622.pdf?rev=97b540cffd854c41b9c376e3aebb1427

28   https://www.austintexas.gov/sites/default/files/files/Health/Terminating%20Order%202021-09a.pdf

   https://www.austintexas.gov/sites/default/files/files/Health/Order%20No%2020220323-37%20%20-%20Notice%20of%20Termination%20of%20Health%20Authority%20Rules.pdf

Michelle Vogler. Further, Ford has failed to demonstrate how conducting such depositions remotely would not prejudice Plaintiff given Ford's past actions and current failure to abide the Federal Rules of Civil Procedure. Last, Ford has failed to demonstrate why depositions of its retained expert witnesses should not be held at the date, time, and place indicated on Plaintiff's notices of deposition.

WHEREFORE, Plaintiff Dr. Staci Hix-Hernandez prays that the Court:

a. deny Ford's motion for protective order regarding the remote depositions of its Rule 26(a)(2) expert witnesses Jennifer Buckman and Dr. Michelle Vogler;

b. deny Ford's request to require Plaintiff to travel to Michigan to conduct depositions of its Rule 26(a)(2) expert witnesses Jennifer Buckman and Dr. Michelle Vogler;

c. deny all other relief requested by Ford; and

d. compel Ford to produce its Rule 26(a)(2) expert witnesses Jennifer Buckman and Dr. Michelle Vogler in Austin, Texas for in-person depositions on a date, time, and location determined by the Court, and to set reasonable costs for the depositions.

Plaintiff further prays for such other and additional relief to which she is justly entitled.

    Respectfully submitted,

    THE MUSICK LAW FIRM, PLLC
    P.O. Box 29685
    Austin, Texas 78755
    (512) 693-7776
    (512) 593-5299

    By:    */s/ Houston Todd Musick*
           Houston Todd Musick
           State Bar No.24076581
           htmusick@themusicklawfirm.com

**THE TYNAN LAW FIRM**
1801 East 51st Street, Suite 365-105
Austin, Texas 78723
(512) 923-7112
(512) 354-7551 fax

By:   */s/ Matthew W. Tynan*
     Matthew W. Tynan
     State Bar No. 24072489
     mwtynan@gmail.com

**ATTORNEYS FOR PLAINTIFF
DR. STACI HIX-HERNANDEZ**

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing document was filed electronically on May 4, 2022. Notice of this filing will be sent to each following attorney of record or party by operation of the Court's electronic filing system. Attorneys and parties may access this filing through the Court's system.

William L. Mennucci
bmennucci@thompsoncoe.com
Ronald D. Wamsted
rwamsted@thompsoncoe.com
THOMPSON, COE, COUSINS & IRONS, L.L.P.
701 Brazos Avenue, Suite 1500
Austin, Texas 78701

**ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY**

                              */s/ Houston Todd Musick*
                              Houston Todd Musick