UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **STACI HIX-HERNANDEZ,** | § | |
| *Plaintiff* | § | |
| **v.** | § | |
| | § | **CIVIL NO. 1:20-CV-00029-RP** |
| **FORD MOTOR COMPANY,** | § | |
| *Defendant* | § | |
| | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

**TO: THE HONORABLE ROBERT PITMAN**
 **UNITED STATES DISTRICT JUDGE**

Before the Court are Ford Motor Company's Motion for Summary Judgment on Plaintiff's Exemplary Damages Claims (Dkt. 45), filed January 26, 2022; Ford Motor Company's Opposed Motion for Protective Order Regarding Depositions of Ford's Experts Jennifer Buckman and Michelle Vogler (Dkt. 54), filed May 2, 2022; and the various response and reply briefs. The District Court referred the Motions to the undersigned Magistrate Ford's Motion for Report and Recommendation and disposition, respectively, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.[1]

## I.   General Background

On the morning of January 10, 2018, Staci Hix-Hernandez, M.D. ("Plaintiff"), a plastic surgeon, was driving her 2017 Mercedes Benz GLS 63 westbound behind a Freightliner tractor-trailer on State Highway 29 in Georgetown, Texas. At the same time, Elizabeth Allen was driving her 2012 Ford F-150 truck ("F-150") in the opposite direction when she crossed into the westbound

---

[1] Ford also has filed a Motion to Exclude Dr. Jahan Rasty's Testimony (Dkt. 52), but it is not yet ripe for adjudication. Dkt. 60. The Court will issue an order on that motion once it becomes ripe.

lanes and crashed head-on into the tractor-trailer. The collision between the tractor-trailer and the F-150 resulted in the F-150's battery dislodging from the engine compartment, becoming airborne and breaking Plaintiff's windshield, striking her in the face. Plaintiff was momentarily knocked unconscious, which resulted in her car veering left and colliding with two other oncoming vehicles.

Plaintiff alleges that the "battery almost killed her through blunt force trauma" and caused her to suffer serious personal injuries, including "facial fractures, a partially torn ear, chemical burns to her face, torso, arms, legs, and both eyes, skin and scalp lacerations, other soft tissue damage, physical pain and suffering, and severe emotional trauma." Plaintiff's First Amended Complaint, Dkt. 47 ¶ 9. Plaintiff was hospitalized and underwent surgery for her injuries. Plaintiff alleges that she has suffered permanent facial and body disfigurement and facial nerve damage and has continuous pain in her scarred areas. Plaintiff, who is a plastic surgeon, also alleges that her injuries have caused her significant loss of earnings and surgical productivity. Plaintiff further contends that her injuries have caused a substantial loss in the quality of her life.

On January 9, 2020, Plaintiff filed this product liability lawsuit against Ford Motor Company ("Ford"). She alleges that: "The F-150 vehicle battery was defectively secured within the engine compartment, as knowingly designed and manufactured by Ford Motor Co. The materials, components, and layout of the bolt system attached to the battery were defectively selected, of insufficient strength, and poorly located." Dkt. 47 ¶ 8. Plaintiff alleges claims of strict liability design defect, negligent design, gross negligence/exemplary damages, and vicarious liability. She seeks monetary damages in excess of $10 million, exemplary damages, disfigurement, damage to her vehicle, and past and future medical expenses, lost wages, pain and suffering, and mental anguish.

## II.  Ford's Motion for Summary Judgment

On January 26, 2022, Ford filed its Motion for Summary Judgment on Plaintiff's Exemplary Damages Claims. Dkt. 45. On February 3, 2022, Plaintiff filed an Unopposed Motion for Leave to Amend Plaintiff's Original Complaint. Dkt. 46. On February 10, 2022, the District Court granted Plaintiff leave, and Plaintiff's First Amended Complaint was filed and became the operative complaint. Dkt. 47.

"An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). As a result, once an amended complaint is filed, that amended complaint renders all earlier motions, including motions for summary judgment, "moot." *Griffin v. Am. Zurich Ins. Co.*, 697 F. App'x 793, 797 (5th Cir. 2017); *AXO Staff Leasing, LLC v. Zurich Am. Ins. Co.*, No. 1:19-CV-2-LY, 2019 WL 6251453, at *2 (W.D. Tex. Nov. 21, 2019), *R. & R. adopted*,  2019 WL 11550863 (W.D. Tex. Dec. 18, 2019).

Accordingly, Plaintiff's First Amended Complaint renders moot all earlier motions including Ford's Motion for Summary Judgment. The Court therefore recommends that the District Court dismiss Ford's Motion for Summary Judgment as moot without prejudice to refiling.

## III. Ford's Motion for Protective Order

Ford has designated Jennifer Buckman and Dr. Michelle Vogler as testifying expert witnesses under Federal Rule of Civil Procedure 26(a)(2). On February 25, 2022, Plaintiff served her Notices of Intent to Take the Oral Deposition of Buckman and Vogler "remotely upon oral examination before an officer authorized by law to administer oaths (via secure videoconferencing platform to be provided by the court reporting agency and recorded stenographically, subject to agreement of the parties to waive the requirements of in person administration of oaths and transcriptions of deposition)." Dkt. 54-1, 54-2. On April 13, 2022, Plaintiff served amended deposition notices on

Buckman and Vogler, stating that these experts would be deposed in person (on May 5, 2022 and

May 6, 2022, respectively) at the offices of Thompson, Coe, Cousins & Irons, L.L.P., in Austin,

Texas. Dkts. 54-3, 54-4 ("Amended Deposition Notices").

In response to the Amended Deposition Notices, Ford filed the instant Motion for Protective

Order under Rule 26(c). Ford asks the Court to order that Buckman's deposition be conducted

remotely or, in the alternative, in Detroit, Michigan, and that Vogler's deposition take place in

Detroit, Michigan. Plaintiff opposes the Motion.

## A.  Legal Standards

Federal Rule of Civil Procedure 30 contains the general procedural requirements for deposing

parties, and provides, in relevant part, the following:

> (1) *Notice in General.* A party who wants to depose a person by oral
> questions must give reasonable written notice to every other
> party. The notice must state the time and place of the deposition
> and, if known, the deponent's name and address.
>
> ***
>
> (3) *Method of Recording.*
>
> > (A) *Method Stated in the Notice.* The party who notices the
> > deposition must state in the notice the method for recording
> > the testimony. Unless the court orders otherwise, testimony
> > may be recorded by audio, audiovisual, or stenographic
> > means. The noticing party bears the recording costs. Any
> > party may arrange to transcribe a deposition.
> >
> > (B) *Additional Method.* With prior notice to the deponent and
> > other parties, any party may designate another method for
> > recording the testimony in addition to that specified in the
> > original notice. That party bears the expense of the
> > additional record or transcript unless the court orders
> > otherwise.
>
> (4) *By Remote Means.* The parties may stipulate—or the court may
> on motion order—that a deposition be taken by telephone or
> other remote means. For the purpose of this rule and Rules 28(a),

4

> 37(a)(2), and 37(b)(1), the deposition takes place where the
> deponent answers the questions.

FED. R. CIV. P. 30(b).

A party or any person who receives a deposition notice may move for a protective order under Rule 26(c) in the court where the action is pending or where the deposition will be taken. Rule 26(c)(1) allows restrictions on discovery "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* The movant has the burden to show good cause, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements in order to prevent discovery." *Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F.3d 540, 549 (5th Cir. 2016) (internal quotation marks omitted). District courts have "wide discretion in determining the method of discovery, such as the designation of the time and place of a deposition, 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Cantu v. Mammoth Energy Servs.*, No. SA-19-CV-00615-DAE, 2021 WL 3852034, at *2 (W.D. Tex. Aug. 27, 2021) (quoting FED. R. CIV. P. 26(c)(1)(B)).

## B. Buckman

Ford asks the Court to order that Buckman's deposition be conducted remotely by videoconference because "Ford has a companywide business policy to protect its employees from COVID exposure by conducting business remotely except for place-dependent business needs." Dkt. 54 at 3. In the alternative, Ford asks that Buckman's deposition be taken in Detroit, Michigan, where Buckman lives and works, instead of in Austin, Texas.

### 1. Request for Video Deposition

In support of its request that Buckman's deposition be conducted by videoconference, Ford relies on several district court opinions issued during the height of the COVID-19 pandemic

ordering depositions to be taken by remote means in order protect the health of witnesses, parties, and counsel. *See, e.g., Dotson v. Bexar Cnty. Hosp. Dist.*, No. SA-19-CV-00083-XR, 2021 WL 796164, at *2 (W.D. Tex. Mar. 2, 2021); *Impulsora de Marcas e Intangibles, S.A. de C.V. v. Dos Amigos, Inc.*, No. 6-19-CV-453-ADA, 2020 WL 4577149, at *2 (W.D. Tex. June 26, 2020). These cases are distinguishable. First, Ford does not ask that Buckman's deposition be conducted remotely out of concerns for her health or anyone else's, but because requiring Buckman to testify in-person would "challenge" Ford's alleged policy that all company business should be conducted remotely "except for place-dependent business needs." Dkt. 54 at 3. Notably, Ford has failed to produce the alleged policy to Plaintiff or to the Court. Dkt. 55 at 5. Plaintiff argues that is because Ford has no such policy, and provides evidence to the contrary.

In addition, the cases Ford cites were issued during the height of the COVID-19 pandemic. Since that time, the pandemic has abated appreciably and the Centers for Disease Control has greatly reduced its protection guidance. On March 16, 2022, the District Judges in this division issued a Standing Order lifting the previously imposed mask mandate at the United States Courthouse in Austin, Texas, and vacating all previous restrictions. *Seventeenth Order Relating to Entry Into The United States Courthouse Austin, Texas In Re: Corona Virus/COVID-19 Pandemic* (W.D. Tex. March. 16, 2022).

For the foregoing reasons, the Court finds that Ford has failed show good cause to conduct Buckman's deposition remotely by videoconference.

### 2. Location of Deposition

In the alternative, Ford asks that Buckman be deposed in Detroit, Michigan, where she lives and works, rather than Austin, Texas. Under Rule 30, a party may choose the place for deposing an opposing party, "subject to the granting of a protective order by the Court pursuant to

Rule 26(c)(2), designating a different place." 8A RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE (WRIGHT & MILLER) § 2112 (3d ed. April 2022 Update).

The "universally accepted rule in federal litigation is that, in the absence of special circumstances (such as an impoverished plaintiff and a very affluent Ford), a party seeking discovery must go where the desired witnesses are normally located." *Work v. Bier*, 107 F.R.D. 789, 793 n.4 (D.D.C. 1985) (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)); *see also Gen. Leasing Co. v. Lawrence Photo-Graphic Supply, Inc.*, 84 F.R.D. 130, 131 (W.D. Mo. 1979) ("In the absence of exceptional or unusual circumstances, when a deponent resides at a substantial distance from the deposing party's residence, the deposing party should be required to take the deposition at a location in the vicinity in which the deponent resides, even if the deponent is a party."). "Having chosen the forum, 'it is the plaintiff who is generally required to bear any reasonable burdens of inconvenience that the action represents.'" *Asevedo v. NBC Universal Media, L.L.C.*, No. Civ. A-12-2005, 2013 WL 3155206, at *4 (E.D. La. June 19, 2013) (quotation omitted).

Accordingly, if Plaintiff wishes to take Buckner's deposition in person, she must do so in the Detroit, Michigan area, where Buckman lives and works.

## C. Vogler

Ford does not contend that Vogler's deposition should be conducted by video, but argues that it should be conducted in the Detroit, Michigan area, where Vogler lives and works. For the same reasons stated above, the Court agrees and orders that Vogler's deposition be conducted in the Detroit, Michigan area.

### IV.  Recommendation and Order

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DISMISS** Ford's Motion for Summary Judgment on Plaintiff's Exemplary Damages Claims (Dkt. 45) as **MOOT** without prejudice to refiling.

**IT IS ORDERED** that Ford's Opposed Motion for Protective Order Regarding Depositions of Ford's Experts Jennifer Buckman and Michelle Vogler (Dkt. 54) is **GRANTED IN PART and DENIED IN PART**. The Court **DENIES** Ford's request that the deposition of Jennifer Buckman occur by remote videoconference. The Court **GRANTS** Ford's request to have the depositions of Jennifer Buckman and Dr. Michelle Vogler to be conducted in the Detroit, Michigan area.

### V.  Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on May 31, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE